DAWN SESTITO (S.B. #214011)
dsestito@omm.com
CATALINA VERGARA (S.B. #223775)
cvergara@omm.com
NOAH ICKOWITZ (S.B. #318803)
nickowitz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California 90071-2899
Telephone:   +1 213 430 6000
Facsimile:    +1 213 430 6407

Attorneys for Defendants
TRADER JOE'S COMPANY, THE
BOARD OF DIRECTORS OF TRADER
JOE'S COMPANY, and THE
INVESTMENT COMMITTEE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RICHARD A. KONG, ROBERT A. CRUZALEGUI, MATTHEW W. HEIDEN, and CASHAY L. CLAYBORN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY, THE BOARD OF DIRECTORS OF TRADER JOE'S COMPANY, THE INVESTMENT COMMITTEE, and JOHN DOES 1-30,<br><br>Defendants. | Case No. 2:20-cv-05790 PA-JEM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:     September 28, 2020<br>Hearing Time:    1:30pm<br>Judge:              Hon. Percy Anderson<br>Courtroom:       9A<br>Action Filed:     June 29, 2020 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 28, 2020 at 1:30pm, or as soon thereafter as this matter may be heard before the Honorable Percy Anderson in Courtroom 9A of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Defendants Trader Joe's Company, the Board of Directors of Trader Joe's Company, and the Investment Committee (collectively, "Defendants") will and hereby do move the Court to dismiss with prejudice the Complaint filed by Plaintiffs Richard A. Kong, Robert A. Cruzalegui, Matthew W. Heiden, and Cashay L. Clayborn (collectively, "Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants base their motion to dismiss on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Declaration of Catalina Vergara; the pleadings in this action and an earlier, related action, *Marks v. Trader Joe's Company*, Case No. CV19-10942-PA-(JEMx); and such other materials and evidence as may be presented to the Court.  The motion is made following the L.R. 7-3 conference of counsel, which took place on August 24, 2020.

This is the second ERISA lawsuit brought against the Trader Joe's Company Retirement Plan (the "Plan") in the past year.  This Court dismissed the first action, *Marks v. Trader Joe's Company*, on April 24, 2020 with leave to amend.  When Plaintiffs in *Marks* failed to amend, this lawsuit—which is based on the same essential theory as *Marks*—followed.  Plaintiffs allege that Defendants breached their fiduciary duties of prudence and loyalty by offering allegedly imprudent investment options and by permitting the Plan's recordkeeper, Capital Research, to receive allegedly excessive fees for their administrative services.  Compl. ¶¶ 109–115.  As in *Marks*, they fail to allege any plausible facts to support their contention that the recordkeeping fees were unreasonable.  And their theory that Defendants breached

their fiduciary duties by offering certain mutual funds when lower-cost investment options were available is a non-starter, as the law recognizes that retirement plan sponsors need not prioritize cost above all else.  Plaintiffs also allege that the Plan fiduciaries breached their duty of loyalty, but they offer no facts in support of the claim.  Finally, Plaintiffs claim that Trader Joe's and the "Board Defendants" failed to monitor the fiduciaries they appointed to oversee the Plan.  *Id.* ¶¶ 116–22.  That claim is derivative of the first and must be dismissed as well.

For these reasons, explained in greater detail in the accompanying Memorandum of Points and Authorities, Defendants request that the Court grant their motion to dismiss both of Plaintiffs' claims with prejudice.  With the benefit of the Court's ruling in *Marks*, Plaintiffs here had the opportunity to attempt to cure the deficiencies the Court identified in the *Marks* Complaint.  They failed to do so.  The Court thus need not grant leave to amend, because amendment would be futile.

Dated:  August 31, 2020             By:     /s/ Catalina Vergara
                                            Catalina Vergara

                                    CATALINA VERGARA
                                    DAWN SESTITO
                                    NOAH ICKOWITZ
                                    O'MELVENY & MYERS LLP

                                    Attorneys for Defendants

                                    TRADER JOE'S COMPANY, THE
                                    BOARD OF DIRECTORS OF
                                    TRADER JOE'S COMPANY, and THE
                                    INVESTMENT COMMITTEE

NOTICE OF MOTION &
MOTION TO DISMISS
2:20-CV-05790 PA-JEM

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   RELEVANT BACKGROUND................................................................ 3

III.  LEGAL STANDARD ............................................................................ 4

IV.   ARGUMENT ......................................................................................... 5

    A.   Plaintiffs' imprudence claim fails.................................................. 5

        1.   Plaintiffs have alleged in conclusory fashion that Defendants charged an "unreasonable" or "excessive fee," but they allege no facts suggesting the fee is, in fact, unreasonable. ................................................................... 6

        2.   Defendants' alleged failure to put the recordkeeping arrangement out to bid, even if true, is insufficient to support an imprudence claim.............................................. 8

        3.   The Complaint's share-class allegations do not save Plaintiffs' imprudence claim. ........................................... 9

        4.   Plaintiffs have no support for their assertion that the method by which Capital Research collected Fund Revenue was imprudent................................................ 11

        5.   The existence of other potentially cheaper alternative investment options cannot save Plaintiffs' imprudence claim.......................................................................... 12

    B.   Plaintiffs fail to allege a viable duty of loyalty claim, adding nothing substantive beyond the imprudence allegations and conclusory allegations about affiliated funds. .................................... 15

    C.   Plaintiffs' failure-to-monitor claim is derivative and also fails.......... 16

    D.   Leave to amend should not be granted. ............................................ 17

V.    CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
446 F.3d 728 (7th Cir. 2006) .................................................................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................... 4, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 4, 5

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*,
No. 17-cv-07243-BLF, 2019 WL 6841222 (N.D. Cal. Dec. 16,
2019) ................................................................................................. 8

*Divane v. Nw. Univ.*,
953 F.3d 980 (7th Cir. 2020) ................................................................ 7

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982) ............................................................... 16

*Dorman v. Charles Schwab Corp.*,
No. 17-cv-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20,
2018) ............................................................................................ 2, 17

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...................................................................... 4, 6

*George v. Kraft Foods Glob., Inc.*,
641 F.3d 786 (7th Cir. 2011) ................................................................ 9

*Goldenberg v. Indel, Inc.*,
741 F. Supp. 2d 618 (D.N.J. 2010) ........................................................ 7

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ..................................................... 1, 13, 14

*In re Calpine Corp.*,
2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ....................................... 17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................4

*Jang v. 1st United Bank*,
    No. 2:11-CV-02427-JAM, 2012 WL 2959985 (E.D. Cal. July 19,
    2012) ....................................................................................................................18

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .......................................................................passim

*Marks v. Trader Joe's Company*,
    No. CV19-10942-PA-(JEMx), 2020 WL 2504333 (C.D. Cal.
    Apr. 24, 2020) ..............................................................................................passim

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ...............................................................12, 13, 15

*Rinehart v. Akers*,
    722 F.3d 137 (2d Cir. 2013), *abrogated on other grounds by*
    *Dudenhoeffer*, 134 S. Ct. 2459 .........................................................................16

*Romero v. Nokia, Inc.*,
    No. C 12-6260 PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2015) .........2, 15, 16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*,
    275 F.3d 1187 (9th Cir. 2001) .......................................................................5, 11

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ...........................................................................17

*Tibble v. Edison Int'l* ("*Tibble I*"),
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, *Tibble II*,
    135 S. Ct. 1823 (2015) ..................................................................................passim

*Tibble v. Edison Int'l* ("*Tibble II*"),
    135 S. Ct. 1823 (2015) .......................................................................................5

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .........passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*White v. Chevron Corp.*,
   No. 16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31,
   2017) ..................................................................................................9, 10

*Wilcox v. Georgetown Univ.*,
   No. CV 18-422 (RMC), 2019 WL 132281 (D.D.C. Jan. 8, 2019) ...................6, 7

*Young v. GM Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ......................................................7, 9

**Statutes**

29 U.S.C. § 1104(a)(1)(A) ............................................................ 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs in this case attempt to revive the ERISA claims against the Trader Joe's Company Retirement Plan (the "Plan") that this Court dismissed in an earlier, related case, *Marks v. Trader Joe's Company*, Case No. CV19-10942-PA-(JEMx), 2020 WL 2504333 (C.D. Cal. Apr. 24, 2020).  The claims here are equally deficient and cannot proceed simply because they are brought by different Plan participants represented by different counsel under a different case number.  Their core theory is the same:  that Defendant Trader Joe's Company ("Trader Joe's") caused the Plan to pay unreasonable recordkeeping fees to the Plan's recordkeeper, Capital Research & Management Company ("Capital Research").  As in *Marks*, Plaintiffs fail to allege facts sufficient to support that claim.  They assume for "purposes of [their] Complaint" that the Plan paid recordkeeping fees of approximately $48 per participant over the relevant period, Compl. ¶ 48 n.4—a fact that the *Marks* plaintiffs disputed—but they allege no facts pertaining to the alleged unreasonableness of that fee, and simply assert that it was excessive.  That is insufficient to state a plausible claim for fiduciary breach.

In an attempt to succeed where the *Marks* plaintiffs failed, Plaintiffs also add two theories of fiduciary breach to their Complaint, but neither states a viable claim.  First, Plaintiffs allege that Defendants breached their duty of prudence on the additional ground that they included certain funds in the Plan lineup that were not the lowest-cost options available.  But as courts have repeatedly held, that fact is insufficient to support a claim for fiduciary breach, because "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."  *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).  Indeed, "[i]t is inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so

significantly." *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016) ("*Chevron I*").   To the extent that Plaintiffs are suggesting that the availability of lower-cost options evidences a failure on the Plan fiduciaries' part to monitor the options they made available to Plan participants, that suggestion is belied by the fact the fiduciaries made adjustments to the Plan lineup over the relevant time period.  *See, e.g.*, Declaration of Catalina Vergara ("Vergara Decl.") Ex. 5 at 159 (2016 Form 5500); Ex. 6 at 195 (2017 Form 5500).[1]

Second, Plaintiffs allege a disloyalty theory that the *Marks* plaintiffs did not pursue—but their Complaint fails to state facts sufficient to support their contention that the Plan fiduciaries acted in any way disloyally in administering the Plan.  Their passing references to the duty of loyalty are not enough.  *Chevron I*, 2016 WL 4502808, at *5 (dismissing loyalty claim "[b]ecause the complaint does not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and includes no separate allegations to support the duty of loyalty claim. . . ."); *Romero v. Nokia, Inc.*, No. C 12-6260 PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2015) (dismissing claim for breach of the duty of loyalty that did not "present any separate allegations regarding any loyalty breach").

Because Plaintiffs' fiduciary breach claim fails for the above reasons, their derivative failure-to-monitor claim also fails.  *See, e.g.*, *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) (dismissing derivative failure-to-monitor claim).   The Court should dismiss Plaintiffs' Complaint in its entirety, this time with prejudice.  Plaintiffs had the

---

[1] All exhibits are attached to the accompanying Declaration of Catalina Vergara. Citations to specific pages in the exhibits are to the page number stamped on the bottom-left footer of each consecutively stamped exhibit, pursuant to L.R. 11-5.2. On a motion to dismiss, the Court may consider Plan-related materials and Form 5500s outside of the Complaint that are central to the plaintiffs' claims and whose authenticity is not in dispute.  *See* Request for Judicial Notice at 3–5.

benefit of the Court's fully reasoned dismissal order in *Marks*, and essentially attempted to re-plead those claims here.  In so doing, they failed to cure the underlying deficiencies in the claims.  Plaintiffs have not, and cannot, state a viable claim for fiduciary breach against Defendants.  Their Complaint must be dismissed.

## II.  RELEVANT BACKGROUND

Trader Joe's, a national chain of neighborhood grocery stores, offers its employees (called "crew members" at Trader Joe's) the opportunity to participate in the Plan, a defined contribution plan governed by ERISA.  Trader Joe's makes annual contributions to eligible crew members' accounts, and the company supports their retirement planning generously.  Vergara Decl. Ex. 7 at 223 (2018 Form 5500).  In 2018, Trader Joe's contributed a sum equal to 10% of eligible crew members' compensation to their Plan accounts, for a total of over $116 million in 100% employer-funded discretionary contributions, without any requirement of a match or other elective contribution.  *Id.* at 222.  Eligible crew members can also make contributions to their Plan accounts from their pretax annual compensation, up to certain limits.  *Id.*  Elective participant contributions in 2018 were approximately $29 million.  *Id.*

Capital Research has served as the Plan's recordkeeper over the entire, six-year period that is relevant to this case.  Vergara Decl. Exs. 2–7 (2013–18 Form 5500s).  In exchange for the administrative and recordkeeping services Capital Research provides, it is paid an annual base fee of $11,650 plus $48 per participant.  Vergara Decl. Ex. 1 at 14 (Recordkeeping Agreement).  Plaintiffs "assume" for purposes of the Complaint that this amount constitutes the recordkeeping fee charged to participants.  Compl. ¶ 48 n.4.  But Plaintiffs need not *assume* this is true, as one can easily ascertain that Capital Research received between $48 and $49 per participant for its annual recordkeeping fees over the relevant time period.

Vergara Decl. ¶ 10.[2]  For example, it was compensated $48.25 per participant in 2018.  *Id.*  Its fee is paid through the "Fund Revenue" provided by certain investment options in the Plan lineup, but Capital Research retains only those amounts necessary to offset its negotiated fees for recordkeeping services, and returns the remainder to the Plan. Vergara Decl. Ex. 1 at 7.

Plaintiffs in this case include four former crew members:  three current Plan participants and one former participant.  Compl. ¶¶ 13–16.  They allege two claims: one against the "Committee Defendants" for an alleged breach of the duties of prudence and loyalty, *id.* ¶¶ 109–15, and another against Trader Joe's and the "Board Defendants" for an alleged breach of the duty to monitor Plan fiduciaries, *id.* ¶¶ 116–22.  Neither of these states a claim upon which relief can be granted, as explained further below.

## III.  LEGAL STANDARD

Motions to dismiss brought under Rule 12(b)(6) are an "important mechanism for weeding out meritless claims" in ERISA cases.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court must accept well-pleaded facts as true, it need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative

---

[2] The figure is calculated using the Recordkeeping Agreement's simple formula and publicly available information about the number of Plan participants.

MEM. OF POINTS & AUTH.
ISO MOT. TO DISMISS
2:20-CV-05790 PA-JEM

level." *Twombly*, 550 U.S. at 555 (citations and quotations omitted).  Generally, in deciding a motion to dismiss, the district court accepts allegations in the complaint as true.  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

## IV.   ARGUMENT

### A.   Plaintiffs' imprudence claim fails.

As in *Marks*, Plaintiffs use a kitchen sink approach with respect to the imprudence theory alleged in their first claim for relief.  They allege that (i) Capital Research's recordkeeping fees should have been lower, (ii) Defendants should have put the Plan's recordkeeping arrangement out to market in order to lower fees, (iii) the Plan should have offered lower-cost share classes of the mutual funds in the Plan lineup to reduce the amount of Fund Revenue paid by investment options in the Plan lineup, (iv) Defendants should not have permitted Fund Revenue to be deposited into a compensation recapture account and rebated to Plan participants, and (v) Defendants should have offered lower-cost investment options to Plan participants.

Each of these theories fails.  A claim of fiduciary imprudence under ERISA requires a plaintiff to allege facts showing that the fiduciary did not act "with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use."  *Tibble v. Edison Int'l* ("*Tibble II*"), 135 S. Ct. 1823, 1828 (2015) (quotations omitted).  Because fiduciary decision-making typically requires "balancing of competing interests under conditions of uncertainty," *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006), the exercise of fiduciary discretion is reviewed "deferentially" for an "abuse of discretion," *id.*, in light of "the circumstances . . . prevailing at the time the fiduciary act[ed]," *Dudenhoeffer*, 573 U.S. at 425 (citation and quotations omitted).  In short,

a fiduciary's prudence is judged according to process, not outcome. *Tibble v. Edison Int'l* ("*Tibble I*"), 729 F.3d 1110, 1136 (9th Cir. 2013), *vacated on other grounds*, *Tibble II*, 135 S. Ct. 1823 (2015).

Plaintiffs fail to state a viable imprudence claim under these standards. As the Court explained in dismissing the *Marks* complaint, the "bare recitation of legal conclusions" offered by plaintiffs in that case were "insufficient to survive a motion to dismiss." *Marks*, 2020 WL 2504333, at *8. Plaintiffs offer nothing more than the same kinds of bare legal conclusions here.

**1. Plaintiffs have alleged in conclusory fashion that Defendants charged an "unreasonable" or "excessive fee," but they allege no facts suggesting the fee is, in fact, unreasonable.**

Attempting to address the Court's concerns in *Marks*, Plaintiffs "assume" for the sake of their Complaint that Capital Research assessed an annual fee of approximately $48 per participant, but they offer nothing to substantiate their assertion that such a fee is unreasonable. Plaintiffs' say-so is not enough.

A number of courts have dismissed imprudence claims for failing to allege an adequate market comparison. For example, the district court in *Wilcox v. Georgetown Univ.* dismissed an imprudence claim where the complaint alleged, without support, that the recordkeeping fee should have been $35 annually per participant. No. CV 18-422 (RMC), 2019 WL 132281, at *11–13 (D.D.C. Jan. 8, 2019). The court in *Wilcox* noted that, "[w]hile a plaintiff is entitled to the reasonable inferences that may arise from the facts asserted in his complaint, Plaintiffs provide no factual support at all for their assertion that the Plans should pay only $35/year per participant in recordkeeping fees." *Id.* at *12. Ultimately, the court held that "[t]he mere allegation that Georgetown could continue to offer the same Plans and the same associated services for $35/year has no factual support, is entirely speculative, contrary to caselaw and common sense, and does not warrant discovery." *Id.* at *13. Other courts are in accord. *See Divane v. Nw. Univ.*, 953 F.3d 980, 991

(7th Cir. 2020) (affirming dismissal and holding defendant "was not required to search for a recordkeeper willing to take $35 per year per participant as plaintiffs would have liked. . . . [P]laintiffs have failed to explain how a hypothetical lower-cost recordkeeper would perform at the level necessary to serve the best interests of the plans' participants."); *see also Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 631 (D.N.J. 2010) (dismissing excessive fee claim "because the Court has no way to gauge the reasonableness of the fee without knowing the cost of providers of the same service.").

Here, worse than the plaintiffs in *Wilcox*, *Divane*, or even *Marks*, Plaintiffs fail to allege *any facts* concerning what would have constituted a reasonable fee—much less any facts connecting any allegedly reasonable fee to the actual services provided by Capital Research to the Plan over the relevant period. *See Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (Sotomayor, J.) (requiring plaintiffs to "allege that the fees were excessive *relative to the services rendered*" (emphasis added); *Marks*, 2020 WL 2504333, at *7 (quoting same). That failure dooms their imprudence claim. It makes little sense to open the doors of discovery and require the parties to incur significant litigation expenses, only to reach summary judgment and find out that Plaintiffs cannot proffer a reasonable and substantiated fee benchmark below that which Capital Research charged Plan participants.

To the extent Plaintiffs might argue that the 1998 Department of Labor ("DOL") statistics cited in Paragraph 101 serve as the requisite benchmark, that is contrary to the plain language of the Complaint, which offers the DOL statistics as purported evidence that a retirement plan can negotiate lower recordkeeping fees as it grows—not as evidence of any alleged benchmark. Compl. ¶ 101. Even if that were not the case, Plaintiffs' reference to the DOL statistics, which come from a study conducted in 1998, could not possibly represent reasonable fees over the time period relevant to this case, which goes back only to 2014. Plaintiffs, in short, have

nothing to substantiate their assertion that Capital Research's recordkeeping fees were unreasonable over the relevant period.

### 2. Defendants' alleged failure to put the recordkeeping arrangement out to bid, even if true, is insufficient to support an imprudence claim.

Plaintiffs' conclusory allegations on Defendants' purported failure to conduct a "Request for Proposal" add nothing to their imprudence claim.  The Court should reject this theory as well—as it did in *Marks*—and should find that "Plaintiffs' Complaint simply recites legal conclusions, and does not allege any facts suggesting that the Plan fiduciaries could have obtained less-expensive recordkeeping services elsewhere through competitive bidding." *Marks*, 2020 WL 2504333, at *7.

As this Court recognized in *Marks*, "nothing in ERISA compels periodic competitive bidding." *Id.*; *Chevron I*, 2016 WL 4502808, at *14 (dismissing duty of prudence claim despite similar competitive bidding allegations); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, No. 17-cv-07243-BLF, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019) (holding the "absence of competitive bidding or RFP process, without more, does not support Plaintiffs' allegations that . . . Defendant[] acted imprudently in violation of § 404(a)(1)(B)."). Yet Plaintiffs fault Defendants for allegedly failing to put the Plan's recordkeeping arrangement out to market, and suggest that a reasonably prudent fiduciary would have "conduct[ed] an RFP at least every three to five years as a matter of course . . . ." Compl. ¶ 102, n.11.  Plaintiffs ignore that alleging Plan fiduciaries are "required to solicit competitive bids on a regular basis has no legal foundation." *Chevron I*, 2016 WL 4502808, at *14.

In support of their allegation that an RFP should be conducted every three to five years, Plaintiffs cite *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786 (7th Cir. 2011).  That case does not support their claim.  In *George*, the court held, on summary judgement, that a triable issue of fact existed regarding the prudence of

MEM. OF POINTS & AUTH.
ISO MOT. TO DISMISS
2:20-CV-05790 PA-JEM

the plan fiduciaries' decision not to solicit competitive bids. *Id.* at 798. The court's holding was based on the evidence that had been adduced in that case, and thus has no application at the pleading stage here—where Plaintiffs have not even alleged that a competitive bidding process would have done the Plan any good, in that they have not alleged any facts from which one could plausibly infer that the same services might have been available for less on the market. *See, e.g.*, *Young*, 325 F. App'x at 33 (holding that plaintiffs had not plausibly alleged that the fiduciaries agreed to pay excessive fees where they "fail[ed] to allege that the fees were excessive relative to the services rendered") (quotation omitted). As this Court held in *Marks*, "there are no facts alleged showing that the Plan fiduciaries failed to consider putting the fee structure out for competitive bidding, or failed to negotiate a reasonable fee structure with Capital Research." *Marks*, 2020 WL 2504333, at *7 (citation and internal quotation marks omitted). Plaintiffs' competitive bidding allegations are thus, again, "insufficient to survive a motion to dismiss." *Id.*

### 3. The Complaint's share-class allegations do not save Plaintiffs' imprudence claim.

Nor can Plaintiffs support their imprudence theory by alleging that Defendants offered retail share classes to Plan participants when lower-cost institutional share classes were available. Again, as the Court noted in *Marks*, "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach." *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("*Chevron II*"); *Marks*, 2020 WL 2504333, at *7 (quoting same). That is because "fiduciaries have latitude to value investment features other than price, and indeed are required to do so, and ERISA does not require fiduciaries to 'scour the market to find and offer the cheapest possible funds.'" *Chevron II*, 2017 WL 2352137, at *14 (citation omitted). Plaintiffs ignore that several courts, including the Ninth Circuit, have specifically

"rejected the argument that a fiduciary should have offered only wholesale or institutional funds." *Tibble I*, 729 F.3d at 1135 (quotations omitted); *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 669–72 (7th Cir. 2011) (affirming grant of motion to dismiss claim that fiduciaries should have offered institutional funds); *Chevron II*, 2017 WL 2352137, at *14 (rejecting similar argument).

Like in *Marks*, Plaintiffs here fail to recognize the reasoning behind these holdings, which is that retail funds can have advantages over their institutional-class counterparts. Retail funds are "offered to investors in the general public, and so the expense ratios necessarily [a]re set against the backdrop of market competition," which benefits participants. *Loomis*, 658 F.3d at 670–71. Indeed, retail funds provide more transparency and offer more opportunities to benchmark. *Id.* at 671–72. And unlike institutional shares, retail funds are highly liquid, unlike "institutional investment vehicles [which have] a drawback [of] lower liquidity." *Id.* at 672. Rejecting a similar attack against retail-class mutual funds, the Ninth Circuit held that "[t]here are simply too many relevant considerations for a fiduciary, for [any] type of bright-line approach [judging the] prudence [of offering retail-class investments] to be tenable." *Tibble I*, 729 F.3d at 1135.

Plaintiffs here do list specific share classes offered in the Plan that they allege were more expensive than their institutional counterparts, Compl. ¶ 85, but they fail to deal with another critical flaw that the Court highlighted in *Marks*. As in *Marks*, "Plaintiffs have failed to make any specific allegations as to . . . whether the investor class share offered other benefits that may have offset any additional cost." *Marks*, 2020 WL 2504333, at *8. Further, to the extent Plaintiffs assert that it is unreasonable for Capital Research to have received more recordkeeping fees from higher-cost as opposed to lower-cost share classes, the judicially noticeable recordkeeping agreement plainly states that Capital Research retained no Fund Revenue beyond its negotiated recordkeeping fee. Vergara Decl. Ex. 1 at 7. That argument, therefore,

carries no weight.  *Sprewell*, 266 F.3d at 98 (holding that on motion to dismiss, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

### 4. Plaintiffs have no support for their assertion that the method by which Capital Research collected Fund Revenue was imprudent.

Without taking into consideration this Court's ruling in *Marks*, Plaintiffs repeat the same novel and unsupported theory of imprudence that the *Marks* plaintiffs advanced:  that Defendants should not have permitted Fund Revenue to have been deposited in a recapture account that was utilized to pay Plan expenses.  Compl. ¶¶ 97–98.  The Court should hold, as it did in *Marks*, that "Plaintiffs do not allege any facts to support this conclusory allegation that Capital Research's repayment of money to Plan participants demonstrates an 'admission of excessive fees' and in turn a breach of the duty of prudence."  *Marks*, 2020 WL 2504333, at *8.  It remains true that this type of arrangement is commonplace for retirement plans.  No ERISA statute or regulation prohibits it, and Plaintiffs cite to none.  Their general reference to the Uniform Prudent Investor Act ("UPIA") does not suffice, as they simply note that the UPIA requires "cost-conscious management."  Compl. ¶ 98.  Nor does their citation to language in the Investment Policy Statement requiring that transactions be made in the "sole interest" of Plan participants give them any traction.  *Id.*  There is nothing from which one could infer that the use of a recapture account was not in the interest of Plan participants, and nothing to suggest the arrangement was contrary to ERISA or its implementing regulations.  The inquiry should end there, as it did in *Marks*.  2020 WL 2504333, at *8.

//

//

//

//

### 5. The existence of other potentially cheaper alternative investment options cannot save Plaintiffs' imprudence claim.

In a last-ditch attempt to allege a viable imprudence claim, Plaintiffs claim that the Plan fiduciaries should have replaced certain mutual funds in the Plan's lineup with allegedly lower-cost options.  That claim fails for a number of reasons.

To the extent Plaintiffs take issue with the Plan's offering of mutual funds on the whole, that approach cannot support an imprudence claim.  As the Ninth Circuit recognized in *Tibble I*, mutual funds "have a variety of unique regulatory and transparency features" that render comparing them to other institutional investment vehicles like collective trusts or separate accounts an "apples-to-oranges comparison." *Tibble I*, 729 F.3d at 1134; *see also Chevron I*, 2016 WL 4502808, at *12.  The sometimes higher price for mutual funds reflect the cost of complying with "reporting, governance, and transparency requirements" that the Securities Act of 1933 and the Investment Company Act of 1940 impose on them, as opposed to other investment vehicles.  *Tibble I*, 729 F.3d at 1134.  Those additional costs, however, bring additional benefits, including a greater ability for plan participants to track fund performance in publicly accessible materials like "newspaper[s] or internet sources," to conduct "mark-to-market benchmark[ing]" themselves, and to ensure the fund's holdings are properly valued.  *Id.*; *see also Loomis*, 658 F.3d at 671–72 (same); *Renfro v. Unisys Corp.*, 671 F.3d 314, 318 (3d Cir. 2011) (noting that mutual funds differ from other investment vehicles because they are subject to certain governance, reporting, and transparency requirements).  Simply put, ERISA has no prohibition on the inclusion of mutual funds in the Plan lineup.

Plaintiffs take issue with the investment management fees associated with certain mutual funds offered in the Plan lineup, Compl. ¶¶ 73–81, but the Ninth Circuit and other courts have rejected such a cost-focused theory for similar reasons to the share-class theory discussed above.  *Tibble I*, 729 F.3d at 1135; *Hecker*, 556

F.3d at 586; *Loomis*, 658 F.3d at 670; *Chevron I*, 2016 WL 4502808, at *10–12. ERISA does not mandate that Plan fiduciaries focus on cost to the exclusion of all other considerations.  "It is inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so significantly." *Chevron I*,  2016 WL 4502808, at *12; *Tibble I*, 729 F.3d at 1134 (rejecting an argument that mutual funds are imprudent where collective trusts or separate accounts with the same investment strategy were available); *Loomis*, 658  F.3d  at  671–72  (same). "Fiduciaries have latitude to value investment features other than price (and indeed, are required to do so), as recognized by the courts." *Chevron I*,  2016 WL 4502808, at *10.  The "fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586; *accord Tibble I*, 729 F.3d at 1135.  That is why "courts have dismissed . . . claims that fiduciaries were imprudent in failing to offer cheaper funds." *Chevron I*, 2016 WL 4502808, at *10.

Plaintiffs also fail to allege facts supporting the conclusory allegation that Defendants did not investigate or select lower cost alternative funds.  The duty of prudence simply requires a fiduciary to "offer participants meaningful choices about how to invest their retirement savings" and a "range of investment options and . . . characteristics of those included options—including the risk profiles, investment strategies, and associated fees." *Renfro*, 671 F.3d at 327–28 (affirming dismissal of claims that fiduciaries should have selected a different mix of investment options); *Loomis*, 658 F.3d 673–74.  Here, the Complaint lacks plausible allegations that the Plan fiduciaries failed to meet this standard—and by the Complaint's own admission, the diverse funds offered in the Plan lineup ranged in their characteristics and risk profiles.  The Plan offered international equity funds, domestic equity funds, index funds, and non-target date balanced funds.   Compl. ¶ 79.  Over the entire relevant

period, the Plan also offered the Invesco Stable Value Fund, which is a collective trust rather than a mutual fund. *See, e.g.*, Ex. 5 at 159 (2016 Form 5500).

Further, judicially noticeable documents reveal that the Investment Committee did not simply sit on its selection of investment options, but made numerous changes to the Plan lineup over the relevant time period. For example, examining the 2016 and 2017 Form 5500s reveals seven changes made to the Plan in that one-year period alone. At least three funds were removed from the Plan lineup during that time: AllianzGI NFJ Small Cap Value Fund, BlackRock S&P 500 Index Fund, and BlackRock U.S. Total Bond Index Fund. Vergara Decl. Ex. 5 at 159 (2016 Form 5500); Ex. 6 at 195 (2017 Form 5500 revealing changes when compared to 2016 Form 5500). During that same time, at least four funds were added to the Plan lineup: iShares MSCI EAFE International Index Fund, iShares S&P 500 Index Fund, iShares Russell 2000 Small-Cap Index Fund, and iShares U.S. Aggregate Bond Index Fund. *Id.* In other years, similar changes were made. *See, e.g.*, Vergara Decl. Ex. 3 at 85 (2014 Form 5500); Ex. 4 at 120 (2015 Form 5500 revealing new and removed funds when compared to 2014 Form 5500). The decision to offer a diverse set of funds—with changes made when appropriate—does not support a breach of fiduciary duty claim.

For Defendants to prevail on this point, the Court need not conclude that the expense ratios alleged are reasonable as a matter of law given that "it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 670 (quoting *Hecker*); *accord Tibble I*, 729 F.3d at 1135. Nonetheless, the expense ratios Plaintiffs allege for certain funds offered under the Plan—ranging from 0.35% to 0.84%—fall within the range found by numerous courts to be reasonable as a matter of law. Compl. ¶ 79. For example, in *Chevron I*,

where the plaintiffs alleged a range of expense ratios reaching up to 1.24%, the court held on a motion to dismiss that "[t]he breadth of investments and range of fees the Plan offered participants fits well within the spectrum that other courts have held to be reasonable as a matter of law."  2016 WL 4502808, at *11.  Indeed, a number of circuit courts have held that *higher* expense ratios than those alleged here were reasonable.  *See, e.g.*, *Tibble I*, 729 F.3d at 1135 (affirming reasonableness of fees that reached up to 2%); *Loomis*, 658 F.3d at 669–72 (affirming dismissal where fees reached up to 0.96%); *Renfro*, 671 F.3d at 319, 326–28 (affirming dismissal where fees reached up to 1.21%).  On these facts, Plaintiffs cannot state a plausible imprudence claim.

**B.  <u>Plaintiffs fail to allege a viable duty of loyalty claim, adding nothing substantive beyond the imprudence allegations and conclusory allegations about affiliated funds.</u>**

Nor can Plaintiffs sustain their first cause of action under a disloyalty theory.  Courts have not hesitated to dismiss duty of loyalty claims that attempt to piggyback on other theories of fiduciary breach, such as the duty of prudence.  *Chevron I*, 2016 WL 4502808, at *5 (dismissing loyalty claim "[b]ecause the complaint does not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and includes no separate allegations to support the duty of loyalty claim. . . ."); *Romero v. Nokia, Inc.*, Case No. C 12-6260 PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (dismissing claim for breach of the duty of loyalty that did not "present any separate allegations regarding any loyalty breach").  Here, Plaintiffs offer almost nothing beyond their imprudence allegations to support the claim.  They make conclusory allegations of unspecified "potential conflicts" related to the fact that American Funds affiliated with Capital Research were offered to Plan participants, Compl. ¶¶ 105–06, but offer nothing to suggest that resulted from any disloyalty on Trader Joe's part.  It is not enough to allege that "Capital and its affiliates were placed in positions that allowed them to reap profits from the Plan at the expense of Plan

participants," *id.*, as there is no prohibition against the offering of funds affiliated with a retirement plan service provider.  The Plan did not limit the investment offerings to American Funds alone, and the mere presence of such funds does not substantiate a disloyalty claim.  *See, e.g.*, Ex. 6 at 195 (2017 Form 5500 showing six funds that were not affiliated with Capital Research or American Funds).

Further, it is true that ERISA imposes on plan fiduciaries an obligation to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), but Plaintiffs have not pleaded a single fact that allows the inference that the Plan fiduciaries discharged their duties with anything other than "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).  Plaintiffs' allegations of loyalty predominantly hinge on the prudence-based allegations in the Complaint, and do not "present any separate allegations regarding any loyalty breach." *Romero*, 2013 WL 5692324, at *5.  Simply attaching the word "loyalty" to the cause of action in the Complaint is not enough.  The claim must be dismissed.

## C.    Plaintiffs' failure-to-monitor claim is derivative and also fails.

Because Plaintiffs fail to plead a duty of prudence or loyalty claim, their second claim for relief—a derivative failure-to-monitor claim—fails.  And even if that claim were not derivative, Plaintiffs' allegations, which are wholly conclusory, do not meet federal pleading standards.  The Court should hold the same as it did in *Marks*, and dismiss this claim.  2020 WL 2504333, at *8.

It is well-settled that "Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA by the Benefit Committee Defendants." *See, e.g.*, *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013), *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. 2459.  That is because "[t]he duty to monitor claim is essentially derivative of the breach of fiduciary duty claim." *Dorman*, 2018 WL

MEM. OF POINTS & AUTH.
ISO MOT. TO DISMISS
2:20-CV-05790 PA-JEM

6803738, at *7; *Chevron I*, 2016 WL 4502808, at *19 (same).  The Court echoed these points in *Marks*.  2020 WL 2504333, at *8.  Here, Plaintiffs' duty of prudence and loyalty claims fail, which means that Plaintiffs' derivative monitoring claim must also fail.  *Dorman*, 2018 WL 6803738, at *7 ("Because the breach of fiduciary duty cause of action fails to state a claim, this [duty to monitor] cause of action does as well.");  *Chevron I*, 2016 WL 4502808, at *19 (same).  The Court should hold as it did in *Marks* and dismiss Plaintiffs' derivative failure-to-monitor claim.  2020 WL 2504333, at *8.

As an additional basis for dismissal, the monitoring claim fails because Plaintiffs fail to plead facts necessary for a monitoring claim to survive.  To state a claim, Plaintiffs must make a "threshold showing that the monitoring fiduciary failed to 'review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards.'"  *Chevron I*, 2016 WL 4502808, at *18  (quoting *In re Calpine Corp.*, 2005 WL 1431506 at *6 (N.D. Cal. Mar. 31, 2005)).  But here, Plaintiffs have made no such showing.  The Complaint is devoid of allegations that Defendants failed to review the performance of appointees to the Investment Committee, other than conclusory allegations reciting the elements of such a claim.  *See generally* Compl.  For that reason, this claim must be dismissed.  *Iqbal*, 556 U.S. at 678.

### D. <u>Leave to amend should not be granted.</u>

The Court should dismiss Plaintiffs' Complaint in its entirety without leave to amend.  "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility . . . or where the amended complaint would also be subject to dismissal."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).  By the Court's own description, this case arises "from the same or closely related transactions, happenings or events" and calls "for determination of the same or substantially

related or similar questions of law and fact" as *Marks*.   July 9, 2020 Order Re Transfer, Docket No. 22.  Amendment would thus be futile, because Plaintiffs already had the chance to cure deficiencies addressed in the Court's detailed dismissal order in *Marks*, and failed to do so.

There are no additional facts that would allow Plaintiffs' claims to survive, and Plaintiffs do not indicate "what more they could plead to state a claim . . . signaling that indeed there are no additional facts Plaintiffs could include in their Complaint if they were granted leave to amend."  *Jang v. 1st United Bank*, No. 2:11-CV-02427-JAM, 2012 WL 2959985, at *3 (E.D. Cal. July 19, 2012).  Presumably, that is why the plaintiffs in *Marks* did not file an amended complaint; there were simply no additional facts to allege in a case involving a reasonable $48 per participant recordkeeping fee.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss Plaintiffs' Complaint with prejudice.

Dated:  August 31, 2020          By:      /s/ Catalina Vergara
                                               Catalina Vergara

                                   CATALINA VERGARA
                                   DAWN SESTITO
                                   NOAH ICKOWITZ
                                   O'MELVENY & MYERS LLP
                                   Attorneys for Defendants
                                   TRADER JOE'S COMPANY, THE
                                   BOARD OF DIRECTORS OF
                                   TRADER JOE'S COMPANY, and THE
                                   INVESTMENT COMMITTEE